IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WEST CORPORATION, | |
| Plaintiff, | 8:19-CV-282 |
| vs. | MEMORANDUM AND ORDER |
| JODY KISTAITIS, et al., | |
| Defendants. | |

This matter is before the Court on West Corporation's motion for a temporary restraining order and preliminary injunction with respect to defendant Doug Thompson (filing 28). The Court will grant the motion in part, entering a temporary restraining order and setting the matter for hearing on a preliminary injunction.

The Court has already discussed this matter in some detail in its previous temporary restraining order (filing 22), so the Court's focus here is simply on the newly alleged conduct of the newly added defendant, Doug Thompson. Thompson was employed by West as a director of product management. Filing 31-5 at 4; filing 31-15 at 1. Thompson, like the other defendants, was involved with West's Interactive Services team. Filing 31-15 at 3. Thompson had contact with West customers and partners. Filing 31-15 at 3-4. He also had access to confidential information West maintained, about its customers and prospective customers, and about its products and services. *See* filing 31-15 at 3-4.

Thompson signed an "Acknowledgement of Conditions of Employment" with West in 2015. Filing 31-16. That document included nondisclosure provisions protecting confidential information regarding West and its

affiliates, their customers, and products. Filing 31-16 at 1-2. Thompson was also barred, for a period of 90 days following termination of his employment, from "directly or indirectly request[ing] or advis[ing] any customer" of West or its affiliates to "withdraw, curtail or cancel its business dealings" with West or its affiliates, although the provision was expressly limited to customers with whom Thompson "had contact in an effort to further a business relationship" with West or its affiliates in the year preceding termination of his employment with West. Filing 31-16 at 2-3.

In November 2018, a friend of Thompson's at CSG International, a West competitor, suggested that Thompson send over his résumé. Filing 31-5 at 1. Thompson said he was cautious, because he thought that "[Mark] Frei will want to really think about the org and not do anything until 2019." Filing 31-5 at 1. But Thompson said he let his friend forward his résumé to the appropriate person at CSG if she "[thought] that [was] a good move." Filing 31-5 at 1. Thompson's résumé seems to have been attached to that email, and by April 2019, he was engaged in the hiring process with CSG. Filing 31-5 at 1; filing 31-7 at 1. He resigned from West effective May 17, 2019. Filing 31-15 at 5. Thompson was evasive with his supervisor when asked about his new employer. Filing 31-15 at 5. Thompson is now employed by CSG in "Business Development." Filing 31-17 at 1.

In the days before leaving his employment, Thompson sent a substantial number of West documents and files from his West email address to his personal Hotmail address. Filing 31-15 at 5-8. Those attachments included contact information and other data about West customers and partners, and technical information about products and services West provided to customers. Filing 31-15 at 5-6. Thompson also forwarded himself confidential information about a proposal West had proffered to a prospective customer. Filing 31-15 at

6. Thompson also sent an email to IMIMobile, a West partner, advising he was "going to CSG to help Mark Frei . . . with a couple of their key accounts." Filing 31-14. He also said he was interested in working with IMIMobile in the future—specifically, that he had his "contact" at another company "looking at" an IMIMobile product, and was "waiting until the fire dies to reach out" to another West partner. Filing 31-14.

The Court finds that showing to be sufficient to warrant issuance of a temporary restraining order. The Court has previously set forth the standards governing the issuance of such an order in this case, and applied those standards to many of the same facts and theories of recovery. *See* filing 22. So, the Court need not repeat that discussion here. It suffices to say that the Court sees a reasonable likelihood of success on the merits of West's trade secrets claims against Thompson, filing 27 at 34-38, given the strong evidence that he obtained and retained confidential information about West's customers and the products and services it provides (or has proposed to provide) to those customers. That also demonstrates a likelihood of success on the breach of contract claim with respect to the nondisclosure provision. The evidence that Thompson has violated, or intends to violate, the non-compete provision is weaker, because that provision is relatively narrow in its scope and timeframe—it's entirely possible, for instance, that he intended to wait out the 90 days before approaching any of his West customers. But as with Kistaitis, the overall pattern of conduct suggests a more aggressive strategy, and it's one the Court is willing to preempt.[1]

---

[1] To a point, at least—the Court notes that West's motion asks for a broader prohibition on competition with West than the non-compete provision itself provided. *Compare* filing 28 at 3, *with* filing 31-16 at 2-3. This order tracks the non-compete provision, not the motion—West is entitled to what it bargained for with Thompson, but not more.

Similarly, the Court finds sufficient evidence that irreparable injury is likely in the absence of an injunction, because of Thompson's aggressive gathering of information from West that appears to be indisputably confidential, and of little value to Thompson other than to facilitate competition with West. It's likely that he expects to use that information, and unlikely that he intends to keep it to himself. And as before, the Court finds that the balance of harms between the parties favors West's position, and that to the extent that the public interest is implicated, it favors contractual integrity, the protection of trade secrets, and fair competition. Accordingly,

IT IS ORDERED:

1. West's Motion for a Temporary Restraining Order and Preliminary Injunction Against Doug Thompson (filing 28) is granted in part as follows.

2. Thompson shall not, directly or indirectly, request or advise any customer of West or its affiliates to withdraw, curtail or cancel its business dealings with West or its affiliates, if Thompson had contact with that customer in an effort to further a business relationship with West or its affiliates in the year preceding the end of his employment with West.

3. Thompson and anyone acting in active concert or participation with him shall not use or disclose confidential information, trade secrets, or other proprietary information that Thompson obtained as a result of his employment with West, including but not limited to: names, addresses,

contract terms, needs, requirements, sales, product and solutions interests or uses, and financial information of West's clients.

4. Thompson and anyone acting in active concert or participation with him—including any agent, employee, officer or representative of CSG (including Frei)—shall return to West any confidential information, trade secrets, or other proprietary information that Thompson obtained as a result of his employment with West, including but not limited to: information, data, documents or materials pertaining to West's customers (whether in original, copied, computerized, handwritten or any other form) and including the names, addresses, telephone numbers, contract terms, needs, requirements, sales, products, or financial information of West's customers.

5. From this date forward, no defendant shall destroy or dispose of any electronically stored information or documents in any form that originated from West. This shall include, but is not limited to, information stored in Thompson's personal email account.

6. This order is effective immediately and shall remain in full force for a period up to and including July 12, 2019, unless extended pursuant to Fed. R. Civ. P. 65(b)(2).

7.  This order shall bind any of the following who receive actual notice of it: the parties; their officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with them.

8.  West is directed to provide a copy of this order to Thompson by electronic mail.

9.  A hearing on preliminary injunction, pursuant to Fed. R. Civ. P. 65(b)(3), is set before the undersigned for July 11, 2019, at 12:00 p.m. in Courtroom 1 (Special Proceedings), Roman L. Hruska Federal Courthouse, 111 South 18th Plaza, Omaha, Nebraska. At that hearing, the Court will consider whether the terms of this order shall be extended, modified, or dissolved.

10. West's motion for expedited discovery related to Thompson (filing 34) is referred to the Magistrate Judge.

Dated this 9th day of July, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge